# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COURTNEY DOWELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-18-108-D |
| COX OKLAHOMA TELECOM, LLC, | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's Motion to Compel Discovery [Doc. No. 18].[1] Defendant has Responded [Doc. No. 24] and Plaintiff has Replied [Doc. No. 25]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff began working for Defendant as a Retention Sales Specialist in February 2016. In or around November 2016, Plaintiff complained to Defendant that a manager was engaged in a quid-quo-pro sexual relationship with another employee. Later, Plaintiff complained to Defendant that the time clock did not adequately record her work hours and she was therefore being underpaid. In February 2017, Plaintiff informed Defendant that she had been diagnosed with rheumatoid arthritis and as a result would need accommodations and FMLA leave.

---

[1] On December 4, 2018, Plaintiff filed a Motion for Expedited Consideration [Doc. No. 19] of her Motion to Compel and the Court issued an Order [Doc. No. 20] granting expeditated consideration on December 5, 2018.

Plaintiff contends that as a result of each of these complaints and the requests related to her medical condition, Defendant subjected her to modified performance sales metrics, selective enforcement of performance metrics, discipline for absences that should have been protected under the FMLA, and denied her requests for FMLA leave. Defendant terminated Plaintiff's employment in May 2017.

Plaintiff brings this action against Defendant alleging claims of retaliation in violation of the Fair Labor Standard Act (FLSA), retaliation for complaining of sexual harassment pursuant to Title VII, retaliation and failure to accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, and FMLA interference and retaliation. [Doc. No. 1 at 4-7]. Defendant contends Plaintiff "was terminated after her job performance (as measured by specifically-identified objective metrics) fell below the minimum acceptable level for four consecutive months." [Doc. No. 24 at 1].

On March 16, 2018, Plaintiff propounded discovery requests to Defendant which included requests for production of: (1) productivity standards for Plaintiff and her department; and, (2) performance-related disciplinary documents for similarly situated employees. [Doc. No. 18-5 at 5-6]; [Doc. No. 24 at 2]. A dispute between the parties arose regarding Plaintiff's Request for Production No. 4 which requests, in pertinent part:

> **REQ PROD NO 4:** If any claimed misconduct or work rule violation played a role in the decisions affecting the Plaintiff or is a part of your affirmative defenses, denials or matters in avoidance, then produce:

2

> A. All warnings, notices, discipline, counseling or documents given to the Plaintiff or included in the file of any of Defendant's employee [sic] regarding such matter;
>
> . . .
>
> E. For two years prior to Plaintiff's termination and through the present, records of similar infractions by any other employees of the Defendant who are similarly situated to the Plaintiff together with the complete disciplinary records related to such matters and records showing:
>
> > a. the identity (name, home address, home phone number), gender, job title, date of hire and prior disciplinary history of such other employee;
> >
> > b. the identity (name, home address, home phone number), gender, job title, date of hire of the person(s) imposing such discipline.

[Doc. No. 18-5 at 5-6]. Defendant objected to this request as: (1) "vague and ambiguous, unduly burdensome, and calls for a legal conclusion"; (2) Plaintiff has made no allegations that "any such 'comparators' were treated more favorably than Plaintiff"; and, (3) the request seeks information protected by the attorney-client privilege and work product doctrine. *Id*. at 6. After conferring with Defendant, Plaintiff agreed to limit the scope of Request for Production No. 4 to performance related disciplinary documents of employees who "worked as Customer Retention Specialists under the same supervisors as Plaintiff in the same location as Plaintiff and at the same time as Plaintiff." [Doc. No. 18 at 8, 11].

Defendant claims to have complied with production as to the productivity standards and objects to production of disciplinary documents of other employees. [Doc. No. 24 at 2-3]. Plaintiff requests the court to compel full responses within the limited scope to which she agreed in conference with Defendant. [Doc. No. 18 at 8, 11].

# DISCUSSION

Control of discovery is entrusted to the sound discretion of the trial courts, and discovery rulings will not be set aside "absent an abuse of that discretion." *S.E.C. v. Merrill Scott & Associates, Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010); *Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017). "An abuse of discretion occurs when a judicial determination is arbitrary, capricious or whimsical," and the Tenth Circuit "will not overturn a discretionary judgment by the trial court where it falls within the bounds of permissible choice in the circumstances." *Punt*, 862 F.3d at 1047 (quoting *United States v. Shumway*, 112 F.3d 1413, 1419 (10th Cir. 1997) (internal quotation marks omitted in original)).

The scope of discovery is controlled by Federal Rule of Civil Procedure 26(b)(1) which provides that:

> [u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 26(b)(1) is explicit that "information subject to discovery is not restricted to evidence that would be admissible at trial." *McDaniel v. Momentive Specialty Chemicals Inc.*, CIV-

13-1186-L, 2014 WL 12767571, at *2 (W.D. Okla. Jan. 15, 2014) (quoting *In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1189 (10th Cir.2009)). Requested information need only be relevant, and relevance is broadly defined to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Fed. Ins. Co. v. Indeck Power Equip. Co.*, CIV-15-491-D, 2016 WL 5173402, at *2 (W.D. Okla. Sept. 21, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Of course, information subject to this broad definition of relevance must be tethered to the claims and defenses in the case and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

However, a request for production "must describe with reasonable particularity each item or category of items to be produced." Fed. R. Civ. P. 34(b)(1)(A). In responding to a request for production, a party need only produce documents, electronically stored information, and tangible things within its possession, custody or control. Fed. R. Civ. P. 34(a)(1). Any objection to a request for production must specify the objectionable part of the request, include the grounds for the objection, and produce information responsive to the non-objectionable portions of the request. Fed. R. Civ. P. 34(b)(2)(B) and (C). In addition, the objection "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

I. **Documents Reflecting Performance Standards.**

Defendant states that it has produced: (1) the "emails from Plaintiff's supervisor communicating the objective standards to which Plaintiff and the other members of her department [were] held for each month that Plaintiff received discipline for unacceptable performance";[2] and, (2) "final scorecards for all Customer Retention Representatives who worked with Plaintiff under the same supervisor for each month of Plaintiff's employment." [Doc. No. 24 at 4, 5]. Plaintiff states that the production of the documents related to performance standards is insufficient because: (1) Defendant produced information only for the months she received discipline; and, (2) the documents produced contain information that is not readable or usable. [Doc. No. 25 at 1, 2].

**A. Scope of Production of Documents Regarding Performance Standards.**

Plaintiff asserts that she requested documents related to performance standards for the entire tenure of her employment with Defendant. [Doc. No. 25 at 2]. Defendant produced performance standard documents only for the months Plaintiff received disciplinary action for unacceptable performance and performance scorecards for Plaintiff's department for every month she was employed. [Doc. No. 24 at 4, 5]. Defendant argues that Plaintiff has sufficient discovery to compare her performance with that of all the employees under her supervisor during the months she was employed.

---

[2] Defendant notes that Plaintiff's December 2016 goals were not produced and that the document will be produced when it is located. [Doc. No. 24 at 4].

The Court notes Defendant concedes the relevance, for discovery purposes, of the scorecards for the entire tenure of Plaintiff's employment by its production thereof. However, Defendant provides no explanation or argument as to why it finds the scorecards for the entire tenure of Plaintiff's employment relevant but not the performance standards which dictated the content of those scorecards.

Plaintiff's Complaint [Doc. No. 1] alleges, in part, that the performance standards were modified over the course of her employment in response to various complaints and requests she submitted to Defendant. Documents reflecting the performance standards for Plaintiff's department during the entire tenure of her employment are therefore relevant to her claims. Accordingly, the Court finds that Defendant should be compelled to produce documents related to the performance standards for both Plaintiff and her department for the entire tenure of Plaintiff's employment with Defendant.

### B. Quality of Documents Produced.

Plaintiff asserts that there are discrepancies or errors in the performance standards documents produced by Defendant which render the documents unreadable and unusable. Plaintiff represents that these discrepancies are not apparent in the parties' filings due to redactions made for the purpose of attachment to Defendant's Response. [Doc. No. 25 at 1]. Plaintiff represents that she has requested "usable and readable" versions of the documents and that Defendant has not informed her whether such documents exist. *Id*. at 2. The Court directs Defendant to either produce readable and accurate copies or, if

appropriate, inform Plaintiff that the copies previously produced are the best copies available.

## II.  Performance Related Disciplinary Documents for Plaintiff's Comparators.

Plaintiff has limited the scope of the request for production to performance related disciplinary records of employees who worked "under the same supervisors as Plaintiff in the same location as Plaintiff at the same time as Plaintiff." [Doc. No. 18 at 8, 11]. Plaintiff compiled a list of fifty-six (56) employees within this limited scope. [Doc. No. 18-6]. Defendant argues that such production: (1) is overly burdensome; (2) is overbroad as Plaintiff has failed to demonstrate that these employees are "similarly situated to her"; (3) has "no relevant connection to Plaintiff's claims; and, (4) "would intrude upon the privacy interest of other, non-party employees." [Doc. No. 24 at 7, 8]. Defendant proposes limiting the scope of the request to "those employees on Plaintiff's list who consistently fell below the 2.0 overall scorecard goal." *Id*. at 10.

The ultimate question about which Plaintiff seeks discovery through Request No. 4 is whether Defendant's Performance Management Guidelines were enforced against her in the same manner they were regarding other employees who likewise fell below performance standards. The request for disciplinary records seeks information related to Plaintiff's allegation that Defendant terminated her based on "selective enforcement of performance metrics." Complaint [Doc. No. 1 at 4, 5, 7, 8]. As noted in Defendant's Response, "[t]he Cox Performance Guidelines state that if an employee does not achieve a

score of at least 2.0, the employee will [] receive disciplinary action - and that the fourth consecutive disciplinary action will result in termination." [Doc. No. 24 at 10-11].

Upon review of the scorecards produced by Defendant, the Court notes that for each month Plaintiff was employed, at least one employee other than Plaintiff scored below the required 2.0 score. [Doc. No. 24-2]. The Cox Performance Management Guidelines state that falling below the required minimum score in "any one month period will result in the beginning of the performance management corrective action process." [Doc. No. 24-3 at 5]. Therefore, the Court finds that disciplinary records for any employee who fell below the 2.0 performance standard are relevant and discoverable in response to Request for Production No. 4.

Based on the language of Defendant's Performance Management Guidelines, the Court specifically rejects Defendant's argument that only disciplinary records for employees "who ***consistently*** fell below" the standard would be relevant. *See* [Doc. No. 24 at 10] (emphasis added). The question is whether Defendant applied the Performance Management Guidelines consistently across all employees who fell below the mandatory standards, or whether Plaintiff was singled out. The requested information is relevant as it bears directly on the issue of selective enforcement of performance metrics raised in Plaintiff's Complaint.

Nor is this production overbroad. Plaintiff seeks performance related disciplinary records about other employees under the same supervisors, in the same location as her, and

employed at the same time who were subject to the same performance standards. [Doc. No. 18 at 8]; [Doc. No. 24 at 6-7]. Whether or not those employees were subjected to the same disciplinary action bears directly on the issue of whether Plaintiff was subjected to selective enforcement of the performance metrics.

Defendant asserts that Plaintiff cannot show that the employees for whom she requests disciplinary documents are "similarly situated to her" and cites to *Mestas v. Town of Evansville*, 17-CV-017-F, 2017 WL 6551288, at *3 (D. Wyo. July 21, 2017), *reconsideration denied, Mestas v. Town of Evansville*, 17-CV-17-F, 2017 WL 6551391 (D. Wyo. Aug. 25, 2017) and *Roberts v. Target Corp.*, CIV-11-0951-HE, 2012 WL 4539202, at *2 (W.D. Okla. Oct. 1, 2012).[3] Defendant quotes *Roberts*, 2012 WL 4539202 at 2, in stating that "[p]retext is more likely to be shown by information that individuals with conduct and evaluations similar to plaintiff were not terminated or disciplined." [Doc. No. 24 at 9-10]. But this is exactly the kind of information Plaintiff seeks.

---

[3] Although the respective district courts mention "similarly situated" employees and pretext, the subject motions to compel were denied not because of an absence of showing the employees were "similarly situated" but because the plaintiff failed to establish the relevance of the requested information or because the request was overly broad. In *Mestas,* the District Court determined the plaintiff failed to establish any relevance between the requested discovery and his claims. *Mestas*, 2017 WL 6551288 at *3. The *Mestas* plaintiff sought entire personnel files based on "the mere fact these five individuals worked with [the p]laintiff." *Id*. In *Roberts*, the District Court denied a motion to compel because it found the temporal and geographical limitations under which the defendant agreed to produce information were reasonable. *Roberts*, 2012 WL 4539202, at *2. The *Roberts* court found the plaintiff's request for "all documents [f]or all persons who were disciplined or terminated from their employment for the same or similar reason as [p]laintiff and who

10

In this case, Plaintiff has demonstrated the relevance of performance related disciplinary documents for employees who fell below the performance standards and has limited the temporal and geographical scope of her request to those employees employed at the same time as her, in the same location, and under the same supervisors. The Court finds that performance related disciplinary records for any of the fifty-six (56) employees listed by Plaintiff who fell below the mandatory performance standard during any month of Plaintiff's employment are relevant to her claims of selective enforcement of performance metrics and discoverable.

Defendant makes passing mention of the "burden [and] expense" of a "manual search through 56 employees' personnel records" without any supporting facts. Defendant fails to indicate with any specificity: (1) what that expense would be; (2) why a manual search is necessary given the digital nature of the previously produced documents; or, (3) why a manual search, if necessary, would be burdensome given the degree to which Plaintiff has agreed to limit her request. [Doc. No. 24 at 8, 12]. In light of the relevance of the documents requested, the apparent minimal effort required to identify employees who

worked under the same supervisors as [p]laintiff" was overbroad as it contained "no temporal or geographic limits." Unlike the plaintiffs in *Mestas* and *Roberts*, Plaintiff here has demonstrated the relevance of the documents requested, does not request entire employee files, and has adequately limited the temporal and geographic scope of her request.

should have received disciplinary action pursuant to the Performance Management Guidelines, and Defendant's failure to support its vague assertion of "burden [and] expense," the Court finds the request is proportionate to the needs of this case. *Id.*

Finally, Defendant asserts privacy concerns relative to the production of non-party employee disciplinary records, and centers its argument on caselaw stating that "the personnel files of an entire class of employees should not be produced." [Doc. No. 24 at 7-8].[4] The Court agrees that "personnel files often contain sensitive personal information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008). Indeed, the "Supreme Court has underscored that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] 'a party or person from annoyance, embarrassment, [or] oppression....'" *Id.* at 648 - 49 (quoting *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (quoting Fed.R.Civ.P. 26(c)(1) (alterations in original)). However, "[t]his is not to say personnel files are categorically out-of-bounds." *Id.* at 649.

In *Regan-Toughy*, the plaintiff sought the production of a pharmacy employee's entire personnel file on the basis of a rumor that she had improperly accessed her pharmacy

---

[4] The Court notes Plaintiff represents that it is her understanding Defendant's privacy objection was resolved in conference, "specifically due to entry of a protective order governing the use of such information if produced." [Doc. No. 25 at 3].

records and disclosed her diagnosis. *Id*. at 645, 646. The Tenth Circuit affirmed the district court's finding that the request was overly broad but noted "[b]y way of example only, had Toughy issued a more narrowly targeted request focused only on documents (whether from the personnel file or elsewhere) that might indicate disciplinary action" they would be faced with "a very different question." *Id*. at 649. In this case, Plaintiff does not seek the discovery of complete personnel files of an entire class of employees. Plaintiff limits the scope of her request to performance related disciplinary documents from the personnel files only of employees who, like her, fell below the minimum performance standard and worked in the same location under the same supervisors during her employment by Defendant.

As mentioned above, the Court entered an Agreed Protective Order [Doc. No. 11] on July 6, 2018, which states, in pertinent part:

1. The following, if obtained during the course of this litigation, are deemed private and confidential and subject to this Order:

    D. For non-parties, performance appraisals, performance improvement plans and disciplinary records.

[Doc. No. 11 at 1]. Clearly, the Court's Order applies to and protects the disciplinary records of non-party employees. Defendant's reliance on privacy concerns is misplaced.

The Court concludes that Defendant should be compelled to produce all responsive documents as to any employees on Plaintiff's list [Doc. No. 18-6] who fell below the

required minimum performance standard at any time during the tenure of Plaintiff's employment.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel [Doc. No. 18] is **GRANTED**. Defendant is directed to produce: (1) readable and usable copies of all documents reflecting the productivity standards/goals for Plaintiff and her department for the entire tenure of her employment with Defendant; and, (2) all performance related disciplinary documents for any and all employees identified on Plaintiff's list [Doc. No. 18-6] who fell below the required minimum performance standard during any month of Plaintiff's employment.

**IT IS SO ORDERED** this 7th day of January 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE